UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| GLORIA LARA,<br><br>　　　　　　　Plaintiff,<br>　v.<br>ONSITE HEALTH, INC.,<br>　　　　　　　Defendant.<br>_____/ | No. CV 12-3337 MEJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**Re: Docket No. 5** |

**INTRODUCTION**

Gloria Lara brings this lawsuit against Defendant Onsite Health, Inc. alleging a retaliatory discharge based on her opposition to Onsite's violations of minimum wage and overtime laws. Compl. ¶ 1, Dkt. No. 1. Pending before the Court is Onsite's Motion to Compel Arbitration. Dkt. No. 5. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and VACATES the September 20, 2012 hearing. After consideration of the parties' briefs, and controlling authorities, the Court **GRANTS** Onsite's Motion.

**BACKGROUND**

The following factual background is taken from Lara's Complaint. Onsite provides mobile dental and medical services to governmental and private entities. Compl. ¶ 5. Lara began working for Onsite in 2008 as a part-time hourly wage employee doing registered dental assistant work, earning $28.00 per hour. *Id.* ¶¶ 5, 6. Starting in July 2010, Lara began working full-time for Onsite,

earning $2,427.09 twice a month. *Id.* ¶ 6. As part of her employment, Lara signed the following Binding Arbitration Agreement on July 30, 2010:

> To aid in the rapid and economical resolution of any disputes which may arise under this offer letter agreement, you and Onsite Health, Inc. (the Company) agree that any and all claims, disputes or controversies of any nature whatsoever arising from or regarding the interpretation, performance, negotiation, execution, enforcement or breach of this offer letter agreement, your employment, or the termination of your employment, shall be resolved, to the greatest extent permitted by applicable law, by confidential, final and binding arbitration conducted before a single arbitrator with JAMS, Inc. . . or . . . the American Arbitration Association ("AAA"). . . . **You and the company acknowledge that by agreeing to this arbitration procedure, we each waive the right to resolve any such dispute through a jury by trial, judge or administrative proceeding. You will have the right to be represented by legal counsel at any arbitration proceeding.** The arbitrator shall: (a) have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be available under applicable law in a court proceeding; and (b) issue a written statement signed by the arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim, the reasons for the award, and the arbitrator's essential findings and conclusions on which the award is based. The Company shall bear JAMS' arbitration fees and administrative costs. Nothing in this Agreement shall prevent either you or the Company from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration.

Ritz Decl., Ex. 1, Dkt. No. 6-2 (emphasis in original).

As a full-time employee, Lara alleges that she was a non-exempt employee, but she regularly worked overtime, often working 10 hours per day. *Id.*

On April 20, 2011, Lara notified Onsite that she needed to be out for a disability leave. *Id.* ¶ 7. Onsite approved the leave for seven days. *Id.* At the same time, Lara also notified Onsite that she believed it was wrong to not pay her overtime. *Id.* ¶ 8. Onsite responded that Lara was a full-time salaried employee and was therefore not entitled to overtime compensation. *Id.* ¶ 9.

Lara's disability leave was subsequently extended by her treating health care provider until June 1, 2011, with a return to work date of June 2. *Id.* ¶ 11. Lara emailed Laurie Mann (her immediate supervisor) and Paula Ritz (Onsite's Director of Human Resources) on May 25 and 31, 2011, stating that she intended to return to work on June 2 and asking for a schedule. *Id.* ¶¶ 12, 13. However, on June 1, 2011, Lara received an email from Ritz stating that her position with Onsite had been eliminated due to organizational restructuring and a lack of business. *Id.* ¶¶ 12, 14.

Lara filed the present Complaint on June 28, 2012. She alleges retaliatory discharge under 29

U.S.C. § 216, wrongful discharge, failure to grant a reasonable accommodation for her disability, violation of California Labor Code section 2699, and claims under the California Fair Employment and Housing Act ("FEHA").

On August 9, 2012, Onsite filed the present Motion to Compel Arbitration. Dkt. No. 5-1. In its motion, Onsite argues that Lara is bound by the July 30 Arbitration Agreement. Def.'s Mot. at 2. Specifically, Onsite argues that there is a valid Arbitration Agreement, neither party has waived the right to arbitrate, and no grounds exist for invalidating the provision. *Id.* at 2, 3, 5. Onsite also seeks an order under 9 U.S.C. § 3 staying the pending litigation. *Id.* In response, Lara argues that the Arbitration Agreement is both procedurally and substantively unconscionable, and it is therefore invalid and unenforceable. Pl.'s Opp'n at 1, Dkt. No. 6.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2; *see AT & T Mobility, LLC v. Concepcion*, —U.S.—, —, 131 S.Ct. 1740, 1746 (2011). Section 4 of the FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

The FAA reflects "both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 131 S.Ct. at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) and *Rent–A–Center, West, Inc. v. Jackson*, — U.S. —, —, 130 S.Ct. 2772, 2776 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* at 1745–46 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440, 443 (2006) and *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Therefore, arbitration agreements may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 131 S.Ct. at 1744.

## DISCUSSION

### A. Whether a Valid Arbitration Agreement Exists

The first task is to determine whether there is an agreement between the parties to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As arbitration is a matter of contract, a party cannot be required to arbitrate a claim that it has not agreed to arbitrate. *AT & T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648–50 (1986). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, there appears to be no dispute that Lara is a California resident, that Onsite is located in San Mateo County, California, that Lara was employed by Onsite within this judicial district, and that the Arbitration Agreement was signed in California. Compl. ¶4; Lara Decl. ¶¶ 4-5, Dkt. No. 19. Accordingly, this Court looks to California contract law to determine whether the agreement to arbitrate is enforceable.

In California, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). As stated above, Lara signed the Arbitration Agreement on July 30, 2010. There is no dispute that the parties were capable of contracting and that the Arbitration Agreement related to a lawful matter. Nor can there be any dispute as to whether the Arbitration Agreement was supported by sufficient consideration. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's promise to be bound by the arbitration process itself serves as adequate consideration); *see also Strotz v. Dean Witter Reynolds*, 223 Cal.App.3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."),

4

*overruled on other grounds by Rosenthal v. Great Western Fin. Secs. Corp.*, 14 Cal.4th 394 (1996). Thus, there is no reasonable dispute that Lara and Onsite entered into the Arbitration Agreement and that the claims at issue here are covered by the terms of that agreement. Accordingly, the Court finds that a valid Arbitration Agreement exists.

**B.     Whether Onsite May Enforce the Arbitration Agreement**

The FAA "imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1773 (2010) (quoting *Volt*, 489 U.S. at 479). The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party. *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139-41 (9th Cir. 1991).

Here, both Onsite and Lara have tendered the Arbitration Agreement. Ritz Decl., Ex. 1; Lara Decl., Ex. 2. Further, Lara acknowledges having signed the agreement. Lara Decl. ¶¶ 4-5. The agreement explicitly provides that Lara and Onsite agree that any and all claims shall be resolved by final and binding arbitration. Ritz Decl., Ex. 1; Lara Decl., Ex. 2. Accordingly, the Court finds that Onsite may enforce the Arbitration Agreement.

**C.     Whether the Arbitration Agreement Is Unconscionable**

Even if a valid Arbitration Agreement exists and Onsite is able to enforce it, Lara argues that it is unenforceable because it is unconscionable. Pl.'s Opp'n at 2-18. Because Lara is the party opposing enforcement of the otherwise valid Arbitration Agreement, she bears the burden to prove this defense. *Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 972 (1997).

"General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)); *see also Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 937 (9th Cir. 2001) (citing same). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract." Cal.Civ.Code § 1670.5(a).

Unconscionability has both a procedural and a substantive component. *Armendariz v. Found. Health Psychcare Servs.,* 24 Cal.4th 83, 114 (2000). Although both components must be present before a court will refuse to enforce a contract, a sliding scale applies: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1. Procedural Unconscionability

"The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Gatton v. T–Mobile USA, Inc.,* 152 Cal.App.4th 571, 581 (2007) (citing *Kinney v. United Health Care Services, Inc.,* 70 Cal.App.4th 1322, 1329 (1999)). "The element focuses on oppression or surprise." *Id.* (citing *Armendariz,* 24 Cal.4th at 114). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (citing *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 853 (2001)). "Surprise is defined as 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532 (1997)) (internal quotation marks omitted).

Here, Lara argues that the Arbitration Agreement is procedurally unconscionable because there was both oppression and surprise. First, Lara contends that the agreement was oppressive because it was drafted by Onsite, the stronger party, and presented to her on a "take-it-or-leave it basis" without explanation. Pl.'s Opp'n at 4. Lara further contends that it was hidden in a "bunch of other new hire papers given to her in a packet to sign without sufficient time to consider them or seek advice about them." Pl.'s Opp'n at 1. Lara states that she was given only three days to review the documents and had no choice but to sign them if she wanted her new full-time job. Lara Decl. ¶ 9. Second, Lara argues that the agreement has the element of unfair surprise. Pl.'s Opp'n at 4. Specifically, Lara contends that the agreement was "buried in a bunch of other 'new employee paperwork,'" yet no one from HR was present to answer questions and no one told her that an Arbitration Agreement was included in the paperwork. *Id.* at 4-5. Lara also argues that she signed an

6

incomplete document because the agreement references rules of JAMS, but does not attach or explain the rules. *Id.* at 6.

In its Reply, Onsite appears to concede that the Arbitration Agreement can be considered procedurally unconscionable, focusing entirely on Lara's substantive unconscionability arguments. Def.'s Reply at 2-8.

Here, it is not clear that the agreement has the element of unfair surprise. As part of her Declaration, Lara has included Onsite's "New Hire Packet," which includes a two-page letter from Paula Ritz and 22 pages of documents. Lara Decl., Ex. 1. A cursory review of these documents shows that the Arbitration Agreement is on a separate page, in normal-sized print, with the heading "BINDING Arbitration Agreement," and requires that the employee sign directly under the terms of the agreement. Further, the Agreement explicitly states, in bold font: **"You and the company acknowledge that by agreeing to this arbitration procedure, we each waive the right to resolve any such dispute through a jury by trial, judge or administrative proceeding. You will have the right to be represented by legal counsel at any arbitration proceeding."** Lara Decl., Ex. 2. The Arbitration Agreement provisions are not buried, as Lara contends, and thus, there was no unfair surprise about the terms to the agreement.

However, Onsite does not deny that the Arbitration Agreement was a condition of employment, and that it was presented on a take-it-or-leave-it basis. A contract is the product of oppression if it is a contract of adhesion, one in which there was an inequality of bargaining power denying the weaker party the opportunity to negotiate the terms of the contract. *Armendariz, supra,* 24 Cal.4th at 113. "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Id.* at 115. The contract is imposed and drafted by the party of superior bargaining strength and relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003) (citing *Armendariz*, 24 Cal.4th at 113). Thus, because there was an inequality of

bargaining power, Lara has demonstrated at least some amount of procedural unconscionability due to the adhesive nature of the Arbitration Agreement. *See Lau v. Mercedes-Benz USA, LLC*, 2012 WL 370557, at *8-9 (N.D. Cal. Jan. 31, 2012) (arbitration agreement presented to plaintiff on a take-it-or-leave it basis is procedurally unconscionable).

Onsite's failure to attach the applicable JAMS rules to the arbitration provision, while not dispositive, also adds to the agreement's procedural unconscionability. *Samaniego v. Empire Today LLC*, 205 Cal.App.4th 1138, 1146 (2012) (finding that failure to provide plaintiffs with a copy of the relevant arbitration rules was "significant" in supporting the conclusion that the agreement was procedurally unconscionable). Courts have found oppression where arbitration rules are referenced but not attached in the signed agreement in both employment and non-employment contexts. *Trivedi v. Curexo Tech. Corp.*, 189 Cal.App.4th 387, 393 (2010) (collecting cases holding that a failure to provide a copy of the arbitration rules to which employee would be bound supported a finding of procedural unconscionability); *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003) (establishing the procedural unconscionability factor of oppression because the arbitration rules were not attached to the contract).

Based on this analysis, the Court finds that Lara has met her burden of establishing procedural unconscionability.

### 2. Substantive Unconscionability

Substantive unconscionability concerns the terms of the Arbitration Agreement and whether those terms are overly harsh or one-sided. *Armendariz,* 24 Cal.4th at 114; *Ingle*, 328 F.3d at 1172 ("Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'"). An agreement to arbitrate will satisfy this general standard if the agreement lacks a "modicum of bilaterality." *Armendariz,* 24 Cal.4th at 117. Whether an arbitration agreement is sufficiently bilateral is determined by an examination of the actual effects of the challenged provisions. *Ellis v. McKinnon Broad. Co.,* 18 Cal.App.4th 1796, 1803 (1993) ("Substantive unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made.") (internal quotation marks

omitted).

Lara raises several arguments in support of her position that the Arbitration Agreement is substantively unconscionable. Pl.'s Opp'n at 7-18. The Court shall consider each in turn.

    *a.*  *Proprietary Information, Inventions, and Non-Solicitation Agreement*

Lara's first argument concerns Onsite's Proprietary Information Agreement, which she signed at or about the same time as the Arbitration Agreement. Lara Decl. ¶ 7; Ex. 3. Lara contends that under the Proprietary Information Agreement, Onsite can file a lawsuit in court for breach of the agreement, but the same right is not given to employees. Pl.'s Opp'n at 7. In response, Onsite argues that Lara mischaracterizes the scope of the Proprietary Information Agreement, which does not permit Onsite to file legal claims for damages, but instead allows it to file for injunctive relief. Def.'s Reply at 3. As this right to injunctive relief is consistent with the Arbitration Agreement, Onsite contends that Lara's argument must fail. Onsite further argues that the Court is not permitted to consider the Proprietary Information Agreement as it is extraneous to the Arbitration Agreement. *Id.* at 2.

Upon review of the Proprietary Information Agreement, the Court finds that Lara's argument is without merit. Although Lara argues generally that the agreement permits Onsite to file a "lawsuit in court . . . and does not give that same right to employees," this argument mischaracterizes the scope of the agreement. Section 9.1 of the agreement provides:

> I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company and <u>the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief</u>, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

Lara Decl., Ex. 3, § 9.1 (emphasis added). This right to injunctive relief is consistent with the Arbitration Agreement, which expressly states that "[n]othing in this Agreement shall prevent either you or the Company from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration." Lara Decl., Ex. 2. Thus, the Proprietary Information Agreement

merely confirms the right to injunctive relief contained in the Arbitration Agreement.

Moreover, Lara cites to no provision in the Proprietary Information Agreement which prohibits an employee from seeking injunctive relief as provided in the Arbitration Agreement. In fact, the Court has reviewed the agreement in its entirety and finds no such provision. Instead, the evidence before the Court shows that the parties entered into an Arbitration Agreement that requires both parties to resolve any disputes by binding arbitration, with the exception of injunctive relief. Lara Decl., Ex. 2.

In her Opposition, Lara cites to three cases in support of her argument, all of which are inapplicable here. First, Lara cites to *Stirlen v. Supercuts*, in which the court held an arbitration clause unenforceable because, in part, it was unconscionably one-sided; specifically, the employer could use the court system for certain claims, but the employee was required to use arbitration for all his. 51 Cal.App.4th at 1530, 1552. However, *Stirlen* is inapplicable because the Arbitration Agreement in this case requires both parties to arbitrate their claims. Lara also relies on *Mercuro v. Superior Court*, in which the court held an arbitration agreement was unconscionable because it required arbitration of most claims of interest to employees but exempted from arbitration most claims of interest to the employer. 96 Cal.App.4th 167, 176-77 (2002). Here, the Arbitration Agreement was not written to target claims that only employees would likely bring – it requires both parties to arbitrate all claims, but it permits both parties to seek injunctive relief. Finally, Lara cites to *Fitz v. NCR Corp.*, 118 Cal.App.4th 702 (2004). This case is also inapplicable because the employer in *Fitz* specifically reserved the right to bring all claims concerning its confidentiality and non-compete agreements, including claims for damages, to the court. *Id.* at 725-26. No such one-sided reservation is present in this case.

Lara's argument is also misplaced because it focuses on the Proprietary Information Agreement, not the Arbitration Agreement. As the United States Supreme Court held in *Rent-A-Center, West, Inc. v. Jackson*, a challenge to the validity of an agreement to arbitrate is to be decided without reference to the larger contract. 130 S. Ct. at 2778. This is because § 2 of the FAA focuses on the terms of the arbitration agreement itself, "without mention of the validity of the

10

contract in which it is contained." *Id.* "Thus, a party's challenge to another provision of a contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* With this in mind, even if the Court were to find that the Proprietary Information Agreement permitted Onsite to litigate its claims (and no such finding is being made), the Court finds that the parties' Arbitration Agreement is severable from the remainder of the contract and therefore enforceable. *Id.* ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.")

### b. *Injunctive Relief Provision*

Lara's second argument focuses on the injunctive relief provision in the Arbitration Agreement, which provides that, "Nothing in this Agreement shall prevent either you or the Company from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration." Lara Decl., Ex. 2. Lara argues that, although this provision sounds mutual in nature, the practical effect is that it is one-sided in nature because employers are more likely to seek injunctive relief. Pl.'s Opp'n at 11. "An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party." *Fitz*, 118 Cal.App.4th at 724 (citing *Armendariz*, 24 Cal.4th at 119). In *Trivedi*, 189 Cal.App.4th 387, the court concluded that the disputed arbitration clause was substantively unconscionable for two reasons: (1) it included a mandatory attorney fee and cost provision in favor of the prevailing party, which served as a vehicle for the waiver of statutory rights created by the relevant statute and placed the employee at greater risk than if he retained the right to bring his claims in court; and (2) it included a provision allowing a party to seek injunctive relief in court, which is more likely to be invoked by the employer. *Id.* at 395-97.

Here, as to the mandatory fee award, there is no such mandatory fee-shifting agreement in this case. In fact, the Arbitration Agreement here provides that "[Onsite] shall bear JAMS' arbitration fees and administrative costs." Lara Decl., Ex. 2. Accordingly, this is inapplicable. However, as to the injunctive relief provision, the *Trivedi* court noted that "allowing the parties access to the courts

11

only for injunctive relief favors [the employer], because it is more likely that . . . the employer would seek injunctive relief." *Trivedi*, 189 Cal.App.4th at 397. The *Trivedi* court also noted that this "is not a novel or unsupportable proposition," citing two other cases that had made the same point. *Id.* (citing *Fitz*, 118 Cal.App.4th at 725 (finding that it is far more likely that employers will invoke the court's equitable jurisdiction in order to stop employee competition or to protect intellectual property) and *Mercuro*, 96 Cal.App.4th at 176-77 (same)).

In its Reply, Onsite's only responsive argument is that Lara "has cited no authority that supports her argument." Def.'s Reply at 6. However, Lara cites to *Trivedi*, *Fitz*, and *Moreno*. Pl.'s Opp'n at 11. As discussed above, these cases do, in fact, support her argument. Onsite fails to explain how these cases are somehow distinguishable from the present case. Accordingly, because the Arbitration Agreement allows the parties access to the courts only for injunctive relief, and this form of relief favors employers, the Court finds that this provision is substantively unconscionable.

### c. *Onsite Did Not Sign the Arbitration Agreement*

Lara's third argument is that the Arbitration Agreement is non-mutual because Onsite did not sign it. Pl.'s Opp'n at 11-12. In response, Onsite argues that its intent to be bound is evidenced by the fact that the Agreement is printed on its company letterhead. Def.'s Reply at 6.

The signature of a party to be bound by a contract "need not be manually affixed, but may in some cases be printed, stamped or typewritten." *Marks v. Walter G. McCarty Corp.*, 33 Cal.2d 814, 820 (1949) (citations omitted). However, if there is no manual signature, it must still be shown "that the name relied upon as a signature was placed on the document or adopted by the party to be charged with the intention of authenticating the writing. In other words the defendant must intend to appropriate the name as a signature." *Id.*; *see also Donovan v. RRL Corp.*, 26 Cal.4th 261, 277 (2001) (The appearance of the defendant's name in an advertisement constituted an offer; therefore, the defendant's intent to authenticate his or her name as a signature can be established from the face of the advertisement).

Here, the Court finds that Onsite intended to be bound by the Arbitration Agreement. First, Onsite's intent is evidenced by the fact that the Agreement is printed on its company letterhead and,

1 because Onsite submitted its offer of employment in this manner, the Court finds that Onsite intended
2 to authenticate its name as a signature. Lara Decl., Ex. 2. Second, Onsite's intent to be bound is
3 further evidenced by the fact that it presented the Agreement to Lara as part of its New Hire packet,
4 with a letter explaining that Lara must complete and sign all documents to be processed. *Id.* Third,
5 the Agreement itself binds both parties to arbitration, repeatedly referring to "you and Onsite Health,
6 Inc.," or "you and the Company." *Id.* This language establishes that both parties are bound to
7 arbitrate any disputes, with the exception of injunctive relief. Thus, the Agreement is written in terms
8 of both parties' obligations and evidences Onsite's intent to be bound. *See Armendariz*, 24 Cal.4th at
9 117-18 (recognizing the "modicum of bilaterality" required in an arbitration agreement); *see also*
10 *Stirlen*, 51 Cal.App.4th at 1541-42 (same). Taken together, the Court finds that Onsite intended to be
11 bound by the Agreement and that its letterhead was intended to authenticate the Agreement.[1]

               *d.      Termination/Modification Provision*

13        Lara's fourth argument is that the Arbitration Agreement is substantively unconscionable
14 because Onsite gives itself authority to modify it. Pl.'s Opp'n at 14. Specifically, Lara directs the
15 Court's attention to Onsite's offer letter to her, which states: "No term or provision of this letter may
16 be amended, waived, released, discharged or modified except in writing, except that [Onsite] may, in
17 its sole discretion, adjust . . . policies, procedures, etc." Lara Decl., Ex. 4. Lara argues that the
18 Arbitration Agreement specifically refers to arbitration as a "procedure," and that the offer letter
19 therefore gives Onsite unilateral discretion to alter it. Pl.'s Opp'n at 15.

---

[1] Lara cites to two cases in support of her argument that Onsite's failure to sign the Agreement renders it substantively unconscionable. Although both cases involved agreements in which only one party signed the agreement, these cases are both distinguishable in that they lacked mutuality – only one side was required to arbitrate. In *Higgins v. Superior Court of Los Angeles Cnty.*, 140 Cal.App.4th 1238, 1253-54 (2006), the court found the arbitration agreement unconscionable because it required only the petitioners to submit their claims to arbitration and repeatedly included "I agree" language, with the "I" being a reference to the petitioners. In *Sullenberger v. Titan Health Corp.*, 2009 WL 1444210, at *6 (E.D.Cal. 2009), the court found the arbitration agreement unconscionable because it was written almost exclusively in terms of the plaintiff's obligations. Here, the clear language of the Arbitration Agreement requires both parties to submit their claims to arbitration.

13

1    In response, Onsite argues that the Arbitration Agreement itself contains no provision
2 allowing it to unilaterally modify it. Def.'s Reply at 6-7. Onsite argues that the Court should look at
3 the actual Agreement itself, not outside documents, to determine its enforceability. *Id.* at 7.
4    The Court agrees with Onsite. First, in terms of Onsite's ability to unilaterally modify the
5 Arbitration Agreement, no such provision can be found in the Agreement. Lara cites to several cases
6 in support of her argument, (Pl.'s Opp'n at 15-16), but the Court need not consider these cases
7 individually as they are all distinguishable for the same reason – they involve cases in which the
8 arbitration agreements contained a unilateral modification clause that allowed the employer to modify
9 any or all of the agreement. The Arbitration Agreement at issue here contains no such provision.
10 Second, as discussed above, a challenge to the validity of an agreement to arbitrate is to be decided
11 without reference to the larger contract within which it is contained. *Rent-A-Center*, 130 S. Ct. at
12 2778. "Thus, a party's challenge to another provision of a contract, or to the contract as a whole, does
13 not prevent a court from enforcing a specific agreement to arbitrate." *Id.* With this in mind, the
14 Court finds that Onsite is not able to unilaterally modify or terminate the Arbitration Agreement..

15        *e.    Judicial Review of the Arbitrator's Decision*

16    Lara's fifth argument is that the Arbitration Agreement is substantively unconscionable
17 because it does not provide for any judicial review of the arbitrator's decision. Pl.'s Opp'n at 16. In
18 response, Onsite argues that, so long as an arbitration agreement provides for a written decision and
19 does not expressly preclude judicial review, the agreement must be interpreted to provide for judicial
20 review. Def.'S Reply at 7-8.

21    In *Armendariz*, the court held that an arbitration agreement must provide, among other things,
22 a requirement that award decision be written to enable judicial review. 24 Cal.4th at 102-03. The
23 absence of this element renders the agreement substantively unconscionable. *Id.* Here, the
24 Arbitration Agreement provides that:

25 > The arbitrator shall: (a) have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be available
26 > under applicable law in a court proceeding; and (b) issue a written statement signed by the arbitrator regarding the disposition of each claim and the relief, if any, awarded as
27 > to each claim, the reasons for the award, and the arbitrator's essential findings and conclusions on which the award is based.
28

14

1  Lara Decl., Ex. 2. While the Agreement does not specifically state that the arbitrator's decision is
2  subject to judicial review, it is enough that the decision requires the arbitrator's essential findings and
3  conclusions. *Armendariz*, 24 Cal.4th at 107 ("All we hold today is that in order for . . . judicial
4  review to be successfully accomplished, an arbitrator . . . must issue a written arbitration decision that
5  will reveal, however briefly, the essential findings and conclusions on which the award is based.").
6  Thus, although the Arbitration Agreement does not expressly permit or preclude judicial review, it
7  does require that the arbitrator's decision be written to include the essential findings and conclusions
8  on which the award is based. Accordingly, the Agreement can be interpreted to provide for judicial
9  review.[2]

         *f.       Administrative Proceedings*

Finally, Lara argues that the Arbitration Agreement is substantively unconscionable because it prohibits employees from initiating and participating in any administrative proceedings to resolve an employment dispute. Pl.'s Opp'n at 17. Specifically, the Arbitration Agreement provides: "You and the Company acknowledge that by agreeing to this arbitration procedure, we each waive the right to resolve any such dispute through a trial by jury, judge, or administrative proceeding." Lara Decl., Ex. 2.

An arbitration agreement is substantively unconscionable if "it requires the employee to relinquish his or her relevant administrative and judicial rights under federal and state statutes." *Sparks v. Vista Del Mar Child and Family Serv.*, 207 Cal.App.4th 1511, 1523 (2012). However, the inclusion of a provision limiting administrative proceedings in an arbitration agreement does not make the agreement unconscionable. *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal.4th 665, 682 (2010). Rather, arbitration agreements referencing administrative proceedings should be interpreted to apply to those administrative agencies that act as "an adjudicator, rather than as a prosecutor, of employment claims, such as the Labor Commissioner in this state." *Id.* at 681; *see also*

---

[2] In support of her argument, Lara cites to *Sullenberger v. Titan Health Corp.*, 2009 WL 1444210 (E.D.Cal. 2009). However, the present case is easily distinguishable in that the agreement in *Sullenberger* provided for review by a second arbitrator rather than judicial review. *Id.* at 6.

15

1  *Armendariz*, 24 Cal.4th at 99, fn 6 ("Nothing in this opinion . . . should be interpreted as implying
2  that an arbitration agreement can restrict an employee's resort to the Department of Fair Employment
3  and Housing, the administrative agency charged with prosecuting complaints made under the FEHA,
4  or that the department would be prevented from carrying out its statutory functions by an arbitration
5  agreement to which it is not a party."). Such limitations are lawful in California. *Pearson*, 48 Cal.4th
6  at 681.

7        Here, the Agreement refers generally to the right to resolve disputes through a trial by jury,
8  judge, or administrative proceeding, and does not specifically reference whether this refers to
9  adjudicator of claims or a prosecutor of claims. When an arbitration provision is ambiguous, it must
10 be interpreted, if reasonable, in a manner that renders it lawful, both because of the public policy in
11 favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because
12 of the general principle that courts interpret a contractual provision in a manner that renders it
13 enforceable rather than void. *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1473 (2009); *see also*
14 Cal.Civ.Code § 3541 ("[a]n interpretation which gives effect [to an agreement] is preferred to one
15 which makes void"); Cal.Civ.Code § 1643 (if possible without violating the parties' unambiguous
16 intent, a contract is interpreted so as to make it "lawful, operative, definite, reasonable and capable of
17 being carried into effect"). In the present case, the Court construes the language of the Arbitration
18 Agreement, stating that the parties intend it "[t]o aid in the rapid and economical resolution of any
19 disputes which may arise under this offer letter agreement," as stating an intention to lawfully
20 preclude or restrict the parties to the Agreement from submitting their claims for adjudication to an
21 administrative entity, and it does not speak to Lara's rights to prosecute her claims through an agency
22 such as the Labor Commissioner. Therefore, the Court concludes that the inclusion of a provision
23 limiting resort to an administrative forum does not render the Arbitration Agreement unconscionable.

24     3. <u>Summary</u>

25       Taken together, the Court finds that Lara has sufficiently demonstrated that the Arbitration
26 Agreement is both procedurally and substantively unconscionable. The Agreement was drafted by
27 Onsite, the stronger party, presented to Lara on a "take-it-or-leave it basis," and it referred to but did
28

16

1 not include JAMS' rules.  These all act to make the Agreement procedurally unconscionable.
2 Further, the Agreement is substantively unconscionable because it contains an injunctive relief
3 provision, which is unilateral in that it is more likely to be invoked by employers.

**D.     Severability**

Once the Court determines that there is both procedural and substantive unconscionability, it must determine whether it is able to sever the unconscionable terms and enforce the remainder of the Agreement.  *Armendariz*, 24 Cal.4th at 121-22; Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").  In making this decision, the Court looks to the purpose of the Agreement.  "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."  *Armendariz*, 24 Cal.4th at 124.  In particular, when an arbitration clause is "permeated" by unconscionability, severance is not required.  *Id.*

In *Armendariz*, the California Supreme Court found that two factors weighed against severance: (1) multiple unlawful provisions, indicating a systematic effort to impose arbitration as an inferior forum that works to one party's advantage; and (2) the fact that the court would have to reform the contract by augmenting it with additional terms after striking the multiple unlawful provisions.  *Id.* at 124-25.  In applying *Armendariz*, California courts have focused on whether there were multiple unlawful provisions in determining whether the central purpose of the contract was tainted with illegality.  For example, in *Circuit City Stores, Inc. v. Adams*, the court refused to sever the unconscionable provisions of an arbitration clause, which included limitations on damages and the scope of matters that were covered.  279 F.3d at 896.  Likewise, in *Flores v. Transamerica HomeFirst, Inc.*, the court refused to sever out the multiple unconscionable provisions because it was unfair to allow the defendant "to refute the unconscionable aspects of the arbitration agreement which

1  [the defendant] itself drafted and from which [the defendant] stood to benefit." 93 Cal.App.4th at
2  857.  Finally, in *Graham Oil Co. v. ARCO Prod. Co., a Div. of Atlantic Richfield Co.*, the Ninth
3  Circuit chose to strike the entire arbitration clause because the clause contained three different illegal
4  provisions and "represent[ed] an integrated scheme to contravene public policy." 43 F.3d 1244,
5  1248-49 (9th Cir. 1994) (citation omitted).

6       Here, striking the entire arbitration provision is not appropriate because Lara has not shown
7  that the Arbitration Agreement is permeated with unconscionability.  Most provisions contain the
8  essential bilaterality of an arbitration agreement between an employer and an employee.  In fact, as
9  discussed above, only the injunctive relief provision is substantively unconscionable.  And, because
10 this provision is "collateral to the main purpose of the contract," it is easily severable.  *Armendariz*,
11 24 Cal.4th at 124.  Moreover, this provision was not implicated in this case and there is no indication
12 that it adversely affected Lara.  In fact, the Agreement places no limits on the parties' rights to
13 discovery, a neutral arbitrator, a written decision that enables judicial review, and the relief that may
14 be awarded.  Lara Decl., Ex. 2.  The Agreement also provides that Onsite shall bear the arbitration
15 fees and administrative costs.  *Id.*  These are all in keeping with *Armendariz's* requirements for
16 claims related to statutory civil rights, such as FEHA.  *See Armendariz*, 24 Cal.4th at 102-03.
17 Finally, the Court must consider the federal and state policy in favor of arbitration.  *Moses*, 460 U.S.
18 at 24-25 (The FAA represents the "liberal policy favoring arbitration agreements," and "any doubts
19 concerning the scope of arbitrable issues should be resolved in favor of arbitration.").  Therefore, this
20 Court finds it appropriate to sever the injunctive relief provision and compel arbitration in accordance
21 with the parties' Arbitration Agreement.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

**CONCLUSION**

Based on the analysis above, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration, but **SEVERS** the injunctive relief provision. As part of its motion, Onsite has also requested that the Court stay this case pending arbitration. Section 3 of the FAA requires a court to stay litigation of arbitral claims until such arbitration "has been had according to the terms of the agreement." 9 U.S.C. § 3. Therefore, the Court **STAYS** this action pursuant to 9 U.S.C. § 3 pending completion of the required arbitration. All pending case management deadlines are VACATED.

**IT IS SO ORDERED.**

Dated: September 17, 2012

Maria-Elena James
Chief United States Magistrate Judge